WHITLOCK *v.* DUFFIELD, *et al.*

Where a lease is made, with covenant of renewal or that the buildings shall be paid for under an appraisal, and such appraisal takes place: the amount of it does not become a lien upon the demised property.

Covenants are to be expounded so as to carry into effect the intention of the parties. Their spirit, as well as letter, is to be observed; and altho' a covenantor performs a covenant according to the letter, yet if he violates the spirit and does any act to defeat its intent or use, he is guilty of a breach of it.

If a right to any relief be shown by a bill, a demurrer will be overruled.

W. took a lease from D. and others for 20 years at a rent of $152 50, with a covenant that lessors would take the buildings at a valuation or grant a new lease for another term of 20 years " upon such terms as the lessors might think proper and as should be approved of by the lessee; and in case the lessee did not approve of the terms, he was to be at liberty to take away the buildings. An appraisal was duly made; D. and others refused to pay the amount and tendered a renewal-lease for another 20 years, but put the annual rent at $6000. W. filed his bill to compel payment of the appraisal or for a new lease at a fair rental. Demurrer interposed. Although the court suggested that the covenant might possibly turn out to be too indefinite, yet as a remedy at law appeared doubtful and the spirit of the covenant required another lease at a just rent, they overruled the demurrer and required the parties to answer.

*October* 14, 1834.

*Lien.*
*Covenant.*
*Lessor and Lessee.*
*Practice.*
*Demurrer.*

On the first day of June one thousand eight hundred and fourteen the defendants, Margaret Duffield and others, by an indenture of lease, demised to one Nathaniel Howland a certain parcel of land suitable for a rope walk, situated in Brooklyn, for the term of twenty years, at an annual rent of one hundred and fifty-two dollars and fifty cents; with a mutual covenant contained therein that the buildings then erected or to be erected by the lessee and which might be standing upon the premises at the expiration of the term, namely, on the first day of June one thousand eight hundred and thirty-four, should be appraised by three indifferent freeholders, one of whom was to be chosen by the lessors, another by the lessee and these were to select a third; and the lessors were either to pay the appraised value of the buildings to the lessee or his assigns or grant a new lease for another term of twenty years, upon such terms as the lessors might think proper and as should be approved of by

the lessee or his assigns. And in case the lessee or his assigns should not approve of the terms so offered by the lessors, then the lessee or his assigns were to have the liberty of removing the buildings.

After setting forth the above facts, the bill went on to say that the lessors likewise owned the fee of other land adjoining or contiguous to the demised premises, which, in consequence of the great rise in real estate generally in Brooklyn within a few years past, was greatly enhanced in value; and that the lessors, wishing to avail themselves of the advantages to be derived from the increased value of real estate there by an immediate sale and under the supposition that the continued location of the rope walk, by a renewal of the lease for a further term, would prevent an advantageous sale of the property, and being determined, at all events and under any circumstances, not to renew the lease but cause the rope walk to be removed did, in the month of April one thousand eight hundred and thirty-one and at several times prior and subsequent thereto, publicly and privately offer portions of the property for sale in city lots under a pledge that the rope walk should be removed at the expiration of the complainant's lease, and accordingly several of the lots were sold upon this assurance to the purchasers. That, in pursuance of such predetermination not to renew the lease, the defendants, the lessors, caused a notice to be served upon the complainant on the first day of March one thousand eight hundred and thirty-four of their having chosen an appraiser on their part to estimate the value of the buildings and requesting the complainant to choose one on his part in conformity with the covenants contained in the lease. That the latter accordingly nominated an appraiser and gave notice thereof; and the two appraisers thereupon appointed a third; and the parties then entered into a submission in writing, under their hands and seals, to stand to, abide and perform the appraisement and valuation to be made by the appraisers. That on the second day of June one thousand eight hundred and thirty-four the appraisers made in writing and delivered to the parties an appraisement and valuation of the buildings at two thousand three hundred and seven dollars. The com-

plainant then submitted, by his bill, that, as the lessors had previously determined not to renew the lease under any circumstances and had precluded themselves from so doing, by selling lots under an assurance or covenant that the buildings were to be removed at the expiration of the term and as they had voluntarily bound themselves by the submission to abide by the appraisement, they were bound to pay the complainant the two thousand three hundred and seven dollars, but which they had refused to do; and that on the third day of June one thousand eight hundred and thirty-four the lessors gave notice that they declined paying the appraised value of the buildings and tendered to the complainant a new lease of the premises for the term of twenty years at the annual rent of six thousand dollars; that this tender, however, was merely colorable and made in bad faith and was intended, by the grossly exorbitant rent proposed, to preclude the possibility of the complainant's approving or accepting of it. That one year's such rent would be equal to one half of the present value of the demised premises. And the bill prayed that the defendants, the lessors, might be decreed to pay to the complainant the sum of two thousand three hundred and seven dollars with interest from the first day of June one thousand eight hundred and thirty-four and be a lien on the demised premises until paid—or, if it should be considered that the defendants were not bound to pay such appraised value of the buildings, then that it might be referred to a master to ascertain what would be a fair, reasonable and proper rent for a further term of twenty years and that the defendants might be compelled by a decree to execute to the complainant a new lease accordingly; and for further relief.

The defendants demurred to all the discovery and relief sought by the bill; and assigned two causes of demurrer: 1st. That if the complainant had any right or claim of redress, the same was at law and not in this court; and 2nd. A want of equity in the case as made by the bill.

Mr. *H. W. Warner*, in support of the demurrer.

Mr. *G. Brinkerhoff*, for the complainant.

1834.

WHITLOCK
*v.*
DUFFIELD.

THE VICE-CHANCELLOR :—It is to be observed that this *January 19,* bill is framed with a double aspect, either to compel pay- *1835.* ment of the appraisement and establish a lien for the amount upon the premises demised or that the complain- ant's right to a new lease may be declared upon such terms and at such reasonable rent as the court shall as- certain to be just.

If a right to any relief be shown by the bill, the de- murrer must be overruled.

The first objection—that the remedy, if any, is at law— seems applicable to the first branch of the alternative re- lief prayed for ; and if, according to the legal construction and effect of the covenant and of the agreement or sub- mission to abide by and perform the appraisement, an ab- solute liability to pay the amount fixed by the appraisers has been created, then a court of law can furnish an ade- quate and appropriate remedy for enforcing it and the complainant should be left to pursue his remedy there : unless, indeed, their is a lien in equity for the appraised value of the buildings which ought to be enforced against the property—for such a purpose this court might be re- quired to entertain jurisdiction.

This is not a case, however, according to my judgment, in which such a lien can be said to exist, even if an obli- gation rests upon the defendants at law to pay the money. The contract provides for no such thing in terms ; and it is not a case between vendor and vendee of real estate where a lien for the purchase money is implied.

But with respect to a personal liability to pay for the buildings, the covenant is not an absolute one : for it is in the alternative and would be satisfied by the defendants granting a new lease. In an action at law the complainant would be met by evidence of their having offered such new lease, which the complainant declined, and then, according

to the letter of the covenant, it is not obligatory upon the defendants to pay for the buildings. Whether a court of law would permit an inquiry into the circumstances under which such offer was made, as set forth in this bill, may be considered very doubtful or if it did entertain this inquiry and the court and jury should become convinced that the offer of a new lease, at six thousand dollars rent, was merely colorable and made in bad faith and not such a lease as the defendants were bound to propose for the plaintiff's acceptance, still the defendants might perhaps insist upon the right to offer other terms, such as a Court of Equity would deem to be fair and reasonable in preference to paying the appraised value of the buildings and thus embarrass if not entirely defeat the action at law. For these reasons I am inclined to think the remedy at law would be, at least, doubtful and difficult; and also that, if there be any remedy, it is in this court where the defendants can be compelled to make their election, either to pay the amount awarded or specifically perform the alternative part of the covenant.

The next enquiry then is, whether there is enough presented by this bill to authorize the court to interfere even upon this ground.

The covenant in the lease is very indefinite in regard to the terms upon which the new lease should be granted. After providing for the mode of ascertaining the value of the buildings, and declaring that the lessors are to pay the appraised value or grant a new lease for twenty years (and so far it is plain and perfectly optional with the lessors) it goes on to say that if they elect to give a new lease, it is to be upon such terms as they may think proper and as may be approved of by the lessee or his assigns, and if the latter should not approve of the terms so offered by the former, he or they are to be at liberty to take away the buildings. Thus, except as to the duration of the new lease and that it was to be upon the same premises, every thing which it should contain as constituting the terms upon which it was to be granted are left open to the agreement of the parties. In making a proposition for this purpose, the complainant insists that the defend-

ants were bound to make a fair and reasonable proposition —a proposition in good faith and with a view of having it accepted and such a one too as the complainant or any person willing to take a lease of the land for twenty years might, with some degree of propriety, accept, and the bill alleges, in substance, that the proposition was not made with any such view, that the defendants had previously determined not to renew the lease on any terms, that the proposed yearly rent was grossly exorbitant and such as they knew could not be accepted and that the proposition was designedly intended to preclude the possibility of the acceptance of a new lease and thereby, at the same time, to avoid the payment of the valuation. I am not prepared to say, in consequence of these allegations in the bill, that there has not been a breach of the covenant.

Covenants are to be expounded so as to carry into effect the intention of the parties. The spirit as well as the letter of the covenant is to be attended to; and although the covenantor performs it according to the letter, yet, if he violates the spirit and does any act to defeat its interest or use, he is guilty of a breach: Platt on Covenants, 139. The covenant in question can hardly admit of such a latitude of construction as to authorize the defendants, after ascertaining the value of the buildings, to exercise an arbitrary will upon the subject of the terms of a new lease and thereby prevent its acceptance and throw the opposite party upon the only other alternative of removing his buildings. This would render the covenant nugatory, so far as respects the granting of a new lease, and leave it effectual only for the purpose of permitting the lessee or his assigns to take off the buildings. It is true, the words " upon such terms as the lessors might think proper" are expansive and would seem to leave it very much at their will; but when read, as they must be, in connection with the words " and as might be approved of by the lessee or his assigns" the whole sentence implies that the terms to be offered should be made in good faith—should be such as not to shock the " moral sense"—such as might be taken into consideration and with reference to the value of the property and a due regard to

1834.

WHITLOCK
v.
DUFFIELD.

the object of a new lease might possibly be acceptable. If a proposition were thus made in a spirit of fairness and the parties should, notwithstanding, be unable to agree, there might be a difficulty still in making a lease; and whether this court can, in such a case, interpose and settle the terms by a reference to a master, I will not now undertake to determine. Perhaps it may turn out that the covenant in this respect is too loose and indefinite to be the subject of interference here, in the way of decreeing a specific performance: *Rutgers* v. *Hunter*, 6 J. C. R. 220. Still I think good faith and the spirit of the covenant require that, in order to avoid paying for the buildings according to the valuation, the defendants should have made an offer of a new lease at such rent and upon such terms as they, in their own conscience at least, sincerely believed to be just. Any offer not so based, must, in my judgment, be deemed a non-compliance with the spirit and intent of the covenant and insufficient to exonerate them from the payment of the money. As the allegations in the bill (and which stand admitted by the demurrer) go to show that in making the offer, the defendants were actuated by improper motives; that their designs were unjust towards the complainant; not made in good faith or with any idea of its being accepted: but, on the contrary that it was colorable only, and one which they knew could not be accepted, I am far from being certain that the court, under such circumstances, can avoid granting relief to some extent, namely, to the putting of the defendants to their election of either paying for the buildings according to the valuation or of making an offer of a new lease which shall be free from such imputations.

Upon the whole, I think the defendants must answer the bill.

Demurrer overruled, with costs.