### SWIFT et al. v. SHEEHY.

(Circuit Court, W. D. Missouri, W. D. June 27, 1898.)

#### No. 2,256.

LEASE—LIEN FOR IMPROVEMENTS.

Under a lease which provides that at the expiration of the term the lessor shall allow the lessees for improvements placed upon the premises, and that the lessor shall become the owner of such improvements "upon payment to the lessees of said sum," the lessees have an implied lien upon the premises, which may be enforced in a court of equity.

Frank Hagerman, for complainants.

Rozzelle & Walsh and W. R. Douglass, for defendant.

PHILIPS, District Judge. This is a bill in equity to enforce a lien upon certain real estate for the value of improvements placed thereon by complainants, as lessees, under a contract of lease with the defendant, as lessor. The lease ran for 10 years, expiring on the 1st day of April, 1898. The lease contained the following provision:

"At the expiration of said period of ten years for which this lease is made, the buildings and improvements placed on said lots by said lessees or their assigns shall be appraised by three disinterested parties, of whom each party to this lease shall select one, and the two thus selected shall choose a third, and the value of such improvements so fixed shall be paid to said lessees by the lessor; and the lessor shall thereupon become the owner of, and be entitled to the possession of, such buildings and improvements, upon payment to the lessees of said sum so fixed by said appraisers, which sum lessor agrees to pay within thirty days after such appraisal shall have been made."

The bill alleges that timely notice was given by the lessees to the lessor that the lease would not be renewed, and asking for the selection of the appraisers to value the improvements placed by the lessees upon the property, which is claimed to be of the value of $25,000; that, conformably to said contract, each of the parties proceeded to and did select an appraiser, but that the two appraisers thus selected failed to either agree upon the valuation of the buildings placed by the lessees on the premises, or upon a third party to act as such third appraiser. The complainant then alleges that the defendant refused to make any payment for said buildings and improvements, and refuses to make any agreement as to their value, wrongfully claiming that he is not required, under said agreement, to make any purchase, or to make any payment, or in any wise carry out said agreement, "and refuses to take or accept the possession of the property, although tendered to him subject to the lien which the complainants may have, and wrongfully refuses to recognize that the complainants have a lien upon the real estate aforesaid for the value of the improvements." The prayer of the bill is that the court ascertain and decree the amount of compensation that they are entitled to for the buildings and improvements aforesaid, with interest thereon, and that the same be declared as a charge and lien upon the real estate aforesaid, and that said lien be enforced, and for all proper relief, etc. To this bill defendant has demurred on the principal ground that the complainants have an adequate and complete remedy at law on the contract, and have no standing in a court of equity for the relief prayed for.

The controversy between the respective counsel centers upon the question of law as to whether or not, under the terms of this contract, there is any implied lien in favor of the lessees for the value of the improvements placed by them upon the land. Both parties concede that, if there be any such implied lien, it is enforceable on the equity side of the court. Counsel for defendant has referred the court to a number of decisions holding that upon a simple contract of lease, authorizing the lessee to make certain improvements upon the leased premises, to be paid for by the lessor upon the termination of the lease, without any provision, express or implied, giving the lessee a lien for the value of such improvements,

the remedy for a breach of the contract on behalf of the lessee is only at law, as for damages for breach of covenant; *citing* Speers v. Flack, 34 Mo. 101; Kutter v. Smith, 2 Wall. 491; The Confiscation Cases, 1 Woods, 221, Fed. Cas. No. 3,097; Whitlock v. Duffield, 2 Edw. Ch. 366; Allen v. Culver, 3 Denio, 285; Taylor v. Baldwin, 10 Barb. 582; Printing Establishment v. De Westenberg, 46 Hun, 281; Hite v. Parks, 2 Tenn. Ch. 373; Gardner v. Samuels, 47 Pac. 935, 116 Cal. 84; Bream v. Dickerson, 2 Humph. 126. On the other hand, complainants' counsel cites a number of authorities as taking a much broader view of this question; some of them holding that in all such contracts there is an implied understanding that the improvements made upon the premises under such contract shall attach to the property until the value thereof is paid to the lessee. Railroad Co. v. Shortridge, 86 Mo. 662–665; Van Rensselaer v. Penniman, 6 Wend. 569; Bresler v. Darmstaetter, 57 Mich. 311, 23 N. W. 825; National Waterworks Co. v. Kansas City, 10 C. C. A. 653, 62 Fed. 853–864; Hopkins v. Gilman, 22 Wis. 455; same case on second appeal, 47 Wis. 581, 3 N. W. 382; Ecke v. Fetzer, 65 Wis. 55, 26 N. W. 266; Copper v. Wells, 1 N. J. Eq. 10; Berry v. Van Winkle, 2 N. J. Eq. 269; Conover v. Smith, 17 N. J. Eq. 51; Mullen v. Pugh (Ind. App.) 45 N. E. 347; Gray v. Cornwall's Assignee (Ky.) 26 S. W. 1018; and Fowler v. Insurance Co., 28 Hun, 195. The National Waterworks Case is valuable principally for the proposition that the party entitled to take the improvements on payment of the purchase money is not entitled to the possession thereof until the purchase price agreed upon, or fixed by the court, is paid. In my humble judgment, the case of Speers v. Flack, supra, is an apt illustration of what the conservative and safe rule in such cases ought to be. In that case the contract simply provided that if, at the expiration of the term, any buildings should remain on the premises, erected by the lessees, the same should be appraised by disinterested persons, two of whom should be elected by each of the parties, and the fifth by those first chosen; and "said parties of the first part [the lessors], or their representatives, are to allow and pay to the parties of the second part [the lessees], or their representatives, the appraised value of said buildings." The lessees holding over after the expiration of the term, the lessors brought an action of unlawful detainer. As the appraised value of the improvements had not been paid to the lessees at the time of the institution of the suit, the trial court held that the plaintiffs could not recover until they had paid or tendered to the defendants the appraised value of said improvements. It was of this state of the case that the supreme court said:

"The lease was for a fixed and determinate period of time, at the expiration of which the lessors became entitled, by operation of law, to the possession of the demised premises. There is nothing in the deed, expressed or implied, by which the right of the lessors to a return of the possession was made to depend upon the previous performance of the covenant to pay for the improvements. The agreement to pay is a covenant, the nonperformance of which entitled the lessees or their assignees to an action for damages, but nothing more."

But it is to be observed from the contract of lease in question that there is an express stipulation that "the value of such improve-

ments shall be paid to the said lessees by the lessor, and the lessor shall thereupon become the owner of, and be entitled to the possession of, such buildings and improvements upon the payment to the lessees of said sum so fixed," etc. So there is in this contract, distinguishing it from the cases principally relied upon by the defendant's counsel, an express provision that the lessor can only become the owner of, and be entitled to the possession of, the buildings and improvements, upon the payment to the lessees of the value thereof. And, when we arrive at the determination of the question as for what purpose this ownership and possession of the premises were to be withheld from the lessor until payment for the value thereof was made, it seems to me we have reached a proper solution of this controversy. At common law, under a contract of lease by which the lessee was permitted to make improvements upon the land during the existence of his lease, without further express reservation at the termination of the term, the improvements went with the land back to the lessor. The contract in question does not only require the lessor, at the termination of the lease, to pay the lessees the value of the improvements, but it, in effect, entitles the lessees to retain the ownership and possession until the lessor shall pay them therefor, giving them thereby an implied lien upon the improvements as security for the value thereof. The case at bar therefore differs in this material respect from the case of Speers v. Flack, supra, in that there is something expressed in the deed "by which the right of the lessor to a return of the possession was made to depend upon the previous performance of the covenant to pay for the improvements"; the clear intimation of the court being that, if there had been such a provision respecting the retention of possession until the performance of the covenant to pay for the improvements, there would have been an implied lien therefor. These observations are quite applicable likewise to The Confiscation Cases, supra, for the reason that the lease there did "not contain a word which looks like the creation or expectation of a lien on the property itself," because it contained no provision giving the lessee the right to retain the ownership and possession of the improvements until payment therefor was made by the lessor. And it will be found, on examination of the authorities pro and con upon this much-debated question, that the decisions turned largely upon the question of fact as to whether or not there was any express provision in the contract that the valuation of the improvements should constitute a lien upon the property, or whether it contained any terms from which such lien could be implied. Without taking the time or labor to review the authorities and make an analysis thereof, it seems to me that, wherever it affirmatively appears from the contract itself that the lessee is given the right to retain possession of the premises until the lessor compensates him for the value of his improvements, the very object of such retention is to give him an additional security for his protection. For what purpose was the possession of the premises, in effect, to be retained by the lessees until compensated for the value of their improvements? Certainly the effect of the provision was not to vest in the lessees the legal title to the lessor's real estate, but the manifest object was to

give them the right of possession, as a security for their claim; and as they could not continue the use of the property without accounting to the lessor for the rental, if they did not wish to continue the use, as they declared, at the end of the ten-years term, it seems to me that they have a right to go into a court of equity, and tender possession to the lessor, and have their equitable lien thereon enforced, as a means of making their security available. In this respect the right, in principle, differs little from that of a vendee in possession of real property, the legal title to which is in the vendor, in which case, on default of payment by the vendee, the vendor has several remedies. He may sue on the contract, at law, to recover judgment for the purchase money, and levy the execution on the property and sell it; or he may bring ejectment for possession, in which case the vendee within proper time may go onto the equity side of the court, and tender the contract money and demand a deed; or the vendor may in the first instance, notwithstanding he holds the legal title, go into a court of equity and demand that the vendee come forward with the money, or be forever foreclosed. The vendor holds the legal title as mere security for the payment of the purchase money; and as said by the court in Hansbrough v. Peck, 5 Wall. 506:

"In case of persistent default, his better remedy, and, under some circumstances, his only remedy, is to institute proceedings in the proper court to foreclose the equity, where partial payments or valuable improvements have been made. The court will usually give him a day to raise the money,—longer or shorter, depending upon the particular circumstances of the case,—and to perform his part of the agreement."

So here the lessees are entitled to retain possession of this property, as security for their claim against it, until the lessor complies; and they ought not to be required by an action at law to surrender the advantage of this additional security, but ought to be permitted to call the lessor into a court of equity, where the rights of the parties can be determined according to the very justice of the case, and their equitable lien preserved by lis pendens against the lessor and all the world. See Allen v. Taylor, 96 N. C. 37, 1 S. E. 462. The demurrer to the bill is overruled.