Hopkins, Adm'x, vs. Gilman, imp.

HOPKINS, Administratrix, vs. GILMAN, imp.

CONTRACT: LANDLORD AND TENANT: EQUITY. *(1) Lease construed.  (2) Rights of lessee lawfully holding over until his improvements are paid for.  (3) Practice and Pleading in Equity: supplemental answer: new parties.  (4) Equity: Tax deeds cancelled.*

1. A lease of an unimproved city lot provided that in case the ·lessee should make improvements on the premises during the term, it should be optional with the lessor either to have such improvements appraised by arbitrators at the end of the term, "without regard to the situation or value of the premises leased," and pay the lessee such value, or to have the leased premises appraised in like manner, "without regard to the improvements," and renew the lease, etc. The lessee, during his term, built a dwelling house on the lot, and made other valuable improvements suitable for a residence. *Held*,

(1) That, upon the lessor's refusal to renew, the value of *all* such improvements should be allowed to the lessee, and not merely of those which, as between landlord and tenant, might be removed by the latter.

(2) That the *present actual value* of the improvements, treating the property as a *residence*, is the value to be allowed.

2. The judgment of this court on a former appeal herein was remitted in April, 1868, directing the court below to ascertain the value of the improvements made by the plaintiff lessee, and that he be permitted to retain possession until such value was paid to him by the lessor. *Hopkins v. Gilman*, 22 Wis., 476. The plaintiff remained in possession, and the cause was not again brought to a hearing until 1878. *Held*, that in stating an account between the parties, to determine what sum must be paid by the defendant lessor to entitle him to possession, plaintiff must be regarded as a tenant equitably entitled to hold over, and actually holding over, and must be charged with rent (without interest) and all outstanding taxes (as provided in the lease), and is not to be allowed interest on the value of his improvements for any period whatever.

3. In 1876, the defendant lessor filed a supplemental answer, alleging, among other things, that the plaintiff lessee, being in possession, had failed to pay the taxes and assessments for 1869 and subsequent years; that an undivided portion of the lot had consequently been sold for delinquent taxes, and a number of tax certificates were outstanding; and that X. and Y. (the lessee's brothers), for the purpose of creating a cloud upon the title, and to hinder defendant in the enforcement of his rights, had procured and recorded two tax deeds, which they held for the benefit of the lessee; and part of the relief asked was, that the lessee procure from X. and Y. deeds of release of their interest under said tax deeds, and that such tax deeds be adjudged fraudulent and void as against said lessor. *Held,* that there was no error in permitting the supplemental answer to be filed, and X. and Y. brought in as parties defendant; especially as they answered the supplemental answer as a cross bill, without objecting to the order.

4. X. and Y. appearing to have taken their tax deeds for the benefit of the plaintiff lessee, the judgment as to them should declare such deeds cancelled.

APPEAL from the Circuit Court for *Milwaukee* County.

A statement of the contract upon which this action was based, will be found in the report of a former appeal herein (22 Wis., 476). The foregoing head notes, and the opinion, *infra,* state the facts sufficiently for the purposes of this appeal.

The circuit court found as a fact, that the value of the improvements put by the original plaintiff upon the lot in question was, in 1868, after the return of this case from the supreme court, $5,700. It thereupon held that plaintiff was entitled to a judgment against the defendant *Gilman* for $5,700, with interest thereon at seven per cent. from one year after the date of filing the *remittitur* from the supreme court in the office of the clerk of said circuit court; and that plaintiff was entitled to retain the possession of the property until the judgment should be paid, without prejudice to *Gilman's* right to sue for rent, or for use and occupation; and that the action should be dismissed as to the defendants *Bedford B.* and *Edward C. Hopkins.*

From a judgment in accordance with these determinations, the defendant *Gilman* appealed.

The original plaintiff, *Otis B. Hopkins*, having died before the judgment was entered, his administratrix was substituted as plaintiff.

*Joshua Stark*, for the appellant, after arguing at length as to the amount to be allowed for the improvements, contended, among other things, 1. That plaintiff, having continued in possession, was not entitled to interest on the value of the improvements, never liquidated before the findings filed and judgment entered on the last trial of the case. *Marsh v. Fraser*, 37 Wis., 149; *Davis v. Louk*, 30 id., 308, 316; *Holliday v. Marshall*, 7 Johns., 211; *Case of Second St.*, 66 Pa. St., 132. 2. That full relief against all the parties should have been granted in this action, in accordance with the supplemental pleadings and the proofs, and the appellant should not have been turned over to other courts and actions for relief. 1 Story's Eq. Jur., §§ 74 b, 64 k, 455–7; *Prescott v. Everts*, 4 Wis., 319; *Kelley v. Sheldon*, 8 id., 258; *Peck v. School District*, 21 id., 516; *McIndoe v. Morman*, 26 id., 588; *Akerly v. Vilas*, 15 id., 401; *Moryan v. Hammett*, 34 id., 512, 520; *Turner v. Pierce*, id., 658; *Winslow v. Crowell*, 32 id., 662; *Blodgett v. Hitt*, 29 id., 169. 3. That, in granting such relief, the court should have charged plaintiff with the rent of the lot from the time (May 1, 1865) when he ceased payment of rent. Between the expiration of the lease under which he entered, and the former decision of this court, he was clearly a mere tenant from year to year upon the conditions of the lease (*Gilman v. Milwaukee*, 31 Wis., 563); and this relation of landlord and tenant has never ceased. The former decision herein did not destroy that relation and make him a mere licensee of the court, but affirmed his equitable right, *under the provisions of the lease*, to retain his possession until paid for his improvements. See *Van Rensselaer v. Penniman*, 6 Wend., 569; *Holsman v. Abrams*, 2 Duer,

435; 17 N. J. Eq., 51; *Davis v. Louk*, 30 Wis., 308. Until the tenant yields possession to the landlord, he remains liable for rent. *Noel v. McCrary*, 7 Coldw., 623; Taylor's L. & T., sec. 372. This accords with the rule in other and analogous cases. Thus, where the mortgagee of land, after a breach of the mortgage, has obtained peaceable possession, notwithstanding the legal right of the mortgagor to the possession, under our statute, until foreclosure and sale, equity protects the mortgagee in that possession until he is paid in full *(Gillett v. Eaton*, 6 Wis., 30; *Tallman v. Ely*, id., 244; *Stark v. Brown*, 12 id., 572; *Hennesy v. Farrell*, 20 id., 42); but it holds him to account to the mortgagor for the rents and profits, and apply them to the mortgage debt. *Lupton v. Almy*, 4 Wis., 242; *Green v. Wescott*, 13 id., 606; *Ackerman v. Lyman*, 20 id., 454. The same principles have been applied under the "Improvement Act" in this state. *Pacquette v. Pickness*, 19 Wis., 219; *Blodgett v. Hitt* and *Davis v. Louk*, *supra*. See also *McIndoe v. Morman*, *supra*. To the point that plaintiff should be charged for the use of the premises "the rent and taxes stipulated for in the original lease," counsel cited *Taft v. Kessel*, 16 Wis., 273; *Livingston v. Livingston*, 4 Johns. Ch., 291; *Hinsdale v. White*, 6 Hill, 507; *Holsman v. Abrams*, 2 Duer, 435; 13 Johns., 240; 25 N. J. Law, 293. 4. That the court should have rendered judgment in appellant's favor against his codefendants, annulling their tax deeds, and requiring them to execute deeds of release.

*D. G. Hooker*, for the plaintiff, contended, *inter alia*, 1. That the allowance of interest from April 15, 1869, was no error. The agreement was to pay for the improvements at the end of the term, May 1, 1863. As the tenant held over with the consent of the landlord till May 1, 1865, *Gilman's* liability was to pay the value of the improvements as of that date, and he has been *Hopkins'* debtor for the amount ever since, and should, in strict right, have been required to pay interest from that time. *Atkinson v. Richardson*, 15 Wis.,

594. True, during this time plaintiff has had possession of the improvements, which belonged to *Gilman;* but *Gilman,* during the same time, has had possession of the money which belonged to plaintiff. Plaintiff did not retain possession of the property as owner, but held it merely as security for the payment of the debt, as any creditor holds collateral security. His occupation of the premises should not prevent his recovery of interest, because the possession could not be retained except by occupation; and it does not appear that the improvements have deteriorated in consequence of the occupation, nor that such occupation has in fact been a benefit to the plaintiff. 2. That the matters set up in the supplemental answer were properly disposed of by the judgment. (1) A cause of action, to be set up by way of counterclaim, must have existed at the commencement of the action (R. S., sec. 2656, subds. 1, 2; *Richard v. Kohl,* 22 Wis., 506; *Scheunert v. Kaehler,* 23 id., 523; *Orton v. Noonan,* 30 id., 611); and a cause of action accruing in favor of defendant after suit brought, cannot be made available by supplemental answer. *Orton v. Noonan,* 29 Wis., 541. (2) Facts cannot be set up by supplemental answer, which are not consistent with and *in aid of* the original defense. *Noonan v. Orton,* 21 Wis., 283. (3) The plaintiff is under no liability *upon the lease* for the payment of the rent or taxes in question, because the lease had terminated before such rent and taxes accrued. Tenant holding over thereby renews his tenancy only when he holds over with *consent* of the landlord; and *Gilman,* having refused his consent, cannot now claim that plaintiff is in as his tenant. *Birch v. Wright,* 1 D. & E., 378; *Featherstonhaugh ads. Bradshaw,* 1 Wend., 134; *Lloyd v. Hough,* 1 How., U. S., 153, 159. 3. That the supplemental answer contained no averment of insolvency of the plaintiff, nor of any other special matter which could justify the entangling of this suit with the litigation between *Gilman* and the other defendants. *Hiner v. Newton,* 30 Wis., 640; *Noonan v. Orton,* 21 id., 283.

4. That the only question not adjudicated by the former appeal was the value of the improvements. *Reed v. Jones*, 15 Wis., 40.

*J. J. Orton*, for the defendant *B. B. Hopkins*, argued, 1. That this court, on the former appeal, sent the cause back simply for a determination of the amount due plaintiff for his improvements, and with a direction to the court below that he be permitted to retain possession until that amount was paid; and that the circuit court properly followed this direction. 2. That *Gilman*, not consenting to plaintiff's holding over, could not, by his *laches* in respect to the payment of the amount due plaintiff, create any new *contract* relation between himself and plaintiff, while the latter retained possession of the premises, in accordance with the judgment of this court, as security for that amount. *Van Rensselaer v. Penniman*, 6 Wend., 569; *Holsman v. Abrams*, 2 Duer, 435; 2 B. & C., 147, note; R. S., sec. 2187. 3. That as plaintiff was not liable for rents or taxes, there was no ground upon which *B. B.* and *E. C. Hopkins* could properly be made parties to this action; that their rights as against *Gilman* were entirely independent of plaintiff's right to recover the value of his improvements, and the former question ought not to be litigated at plaintiff's expense; and that new defendants can be brought in by order of the court, on the first defendant's petition, only when their presence is necessary to a complete determination of the controversy, or when they have some interest to be protected therein. 1 Van Santv. Pl., 123, 132, 150, 151, 155, 672; R. S., secs. 2610–11, 2834. 4. That the respective rights of the several defendants as affected by the tax deed to *B. B. Hopkins* had been determined in an action by *B. B.* against *Otis B. Hopkins;* and that *Gilman* was bound by the judgment in that action.[1]

---

[1] It has not seemed best to set forth here the grounds of this contention.— REP.

COLE, J. It could hardly have been anticipated, when this case was here on a former appeal (22 Wis., 476), that a decade would elapse before the cause would be brought to a hearing on the issues sent down from this court for trial; and, as both parties are more or less responsible for this delay, their obligations and duties in the mean time cannot be ignored in the final decision of the cause. The only relief which this court thought could be consistently granted on the former appeal, was to send the case back with directions to the circuit court to ascertain the value of the improvements placed upon the property by the plaintiff or his assignor, and to allow the plaintiff to retain possession of the premises until he was paid for such improvements.

This was as far as the court was called upon to go at that time. In conformity with this direction, the cause came on for hearing in June, 1878, and considerable testimony was taken on both sides, bearing upon the question of the value of the improvements placed upon the lot under the lease. At the outset here a question is raised as to the proper basis of estimating the improvements. One of the counsel for the defendant claims that under the covenants of the lease the lessor was bound to pay only for such improvements as, between landlord and tenant, could be removed or were capable of removal. This position is founded upon the clause in the lease which gives the lessor a lien for the rents and taxes on all the improvements which should be made upon the premises, and authorizes the lessor, in case of default on the part of the lessee, to sell the improvements at public auction, and give the purchaser a good and sufficient bill of sale or conveyance of such improvements. This construction of the lease we deem quite too narrow and strict. When the lease was executed, the lot was vacant and unimproved. It was doubtless contemplated by both parties at the time that a dwelling-house and other necessary erections and additions should be placed upon the property, such as would enhance its value

and render it fit for the occupation of the tenant. Therefore, a cistern, well, barn, and other out-houses, placed upon the lot, would be deemed improvements within the meaning of the lease, though they could not all be detached or removed from the premises.

Considering the whole lease, we have no doubt that such erections or additions to the premises, which were calculated to enhance their value and render them desirable as residence property, were improvements within the covenants of the lease. The lease provides, in case the lessee made any improvements on the premises, and the lessor should elect, at the expiration of the term, to pay for them instead of renewing the lease, then that the improvements should be appraised "without regard to the situation or value of the premises leased." The counsel for the plaintiff argues with considerable force and plausibility, that this covenant imports an undertaking on the part of the lessor to pay what the improvements were worth to the tenant, irrespective of their connection with the land (and not what they were worth to the landlord), and without regard to how much they added to the value of the lot. But we think the proper basis is to ascertain the real value of the improvements, or what they are actually worth in their present condition, treating the property as residence property. Of course, if the premises were to be used for business purposes, some of the improvements might be unnecessary and add nothing to the value of the lot. But whatever was built or placed upon the premises which was a substantial benefit to them — whatever rendered them more fit for use as residence property, or more capable of producing an income or rent, — should be paid for at its present cost or actual value.

Now, as we understand the case, the court below proceeded really upon that basis in ascertaining the value of the improvements which the defendant was bound to pay for by the lease. The court assessed such value at the sum of $5,700. It is

claimed that the valuation is excessive, and unwarranted by the testimony. The evidence in regard to the value of the improvements is quite conflicting. While we have carefully considered it, as we find it in the printed case, we are not disposed to disturb the finding of the court below upon that branch of the case. The witnesses differ very widely as to the value of the buildings and structures put upon the premises; but the court below seems to have adopted neither the highest nor the lowest estimates. It would serve no useful purpose to discuss at length the testimony relating to this question of value, and we shall therefore dismiss the matter upon stating our conclusion upon it. We think substantial justice is done by the assessment or valuation made by the circuit court.

The court below further allowed interest on the value of the improvements as assessed, from the 15th day of April, 1869, to the rendition of the judgment. The *remittitur* from this court was filed in the court below April 15, 1868. Probably the circuit court considered that a year afforded ample time and opportunity for the defendant to ascertain and pay the value of the improvements. But the counsel for the defendant insists that as the plaintiff's intestate remained in the possession of the premises, enjoying the use of the improvements, it is inequitable to make the defendant pay interest on their value during such period. Under the circumstances we are disposed to treat the plaintiff like a mortgagee in possession after condition broken, liable for the rent and the payment of the taxes stipulated for in the lease, but that he is not entitled to interest on the value of his improvements.

On the former appeal, as already observed, this court thought the plaintiff had the equitable right to remain in possession until the defendant made payment for the improvements. It was suggested on the argument that this was not a right springing from the lease, but that the plaintiff retained possession solely by virtue of the decree of this court, without refer-

ence to that instrument. Therefore, it is said, the plaintiff was under no obligation, while thus in possession, to pay any rent or taxes, but was absolutely discharged therefrom. This view, we think, is not warranted by the former decision. The court did not then attempt or assume to keep the plaintiff in possession independent of and without any reference to the terms of the lease. But this court then thought, and still thinks, that the plaintiff had the right, by virtue of the conditions in the lease, to remain in possession until the improvements were ascertained and paid for, inasmuch as the defendant refused to renew. But this was a right founded upon the stipulations in the lease, which a court of equity would enforce for the protection of the plaintiff.

It appears to us it would be a most extraordinary claim for a court of equity to sanction, to allow the plaintiff to remain in possession, enjoy the use of the improvements, have interest upon their value as ascertained by the court, but still pay no rent or taxes. A claim so inequitable and unjust cannot receive our assent. It was said that a party is not liable for use and occupation except where the relation of landlord and tenant actually exists, and that this relation arises only upon contract express or implied. But, without refining upon the matter, we reply that a court of equity, having acquired jurisdiction of a cause, will, if possible, do complete justice between the parties. That it is just and equitable, in adjusting the rights of the parties in this case, to charge the plaintiff with rent, as though holding over after the expiration of the term, and also to require him to pay taxes, according to the lease, is to our minds a proposition too plain for argument.

In July, 1876, the defendant *Gilman* made application to the circuit court for leave to file a supplemental answer, and for an order bringing in *Bedford B.* and *Edward C. Hopkins* as parties defendant. Leave was granted, and these persons were brought in, and the supplemental answer was served upon them. The supplemental answer is in the nature of a

cross complaint, as respects these defendants, and seems to have been so treated by them in their respective answers. It states, in brief, that the plaintiff, *Otis B. Hopkins*, has remained in possession of the premises, but has paid no rent since May, 1865; that he has failed and neglected to pay the taxes and assessments levied upon the lot for the year 1869, and for several subsequent years; that, as a consequence, the lot, or an undivided portion thereof, has been sold for the delinquent taxes; that there are a number of tax certificates now outstanding and unredeemed; that the defendants *Bedford B.* and *Edward C. Hopkins*, for the purpose of creating a cloud upon the title, and to hinder and embarrass him in the enforcement of his rights against the plaintiff, and thereby injure him, have procured and placed upon record two tax deeds, issued upon tax certificates, which tax deeds, he alleges, they hold merely in trust and for the benefit of the plaintiff. He asks that the plaintiff account for the rent from the first day of May, 1865, with interest; that he be required to redeem the lot from the tax sales, or to account to him for the amount of such sales, with the statutory interest; that the plaintiff procure from *Bedford B.* and *Edward C. Hopkins* good and valid deeds of release of their interest in the property by virtue of the tax deeds; and that such deeds be adjudged fraudulent and void as against him.

Now the question is, Was not the defendant *Gilman* entitled to that relief upon the pleadings and testimony? We are of the opinion that he was, except that he should have no interest on the rent due and payable by the lease. A question was made as to the regularity of the practice in thus bringing in new parties defendant at that stage in the cause. We can see no substantial objection to the course pursued. Furthermore, both *Bedford B.* and *Edward C. Hopkins* appeared and answered the supplemental answer, and submitted proofs on the issues made therein without objection. These parties claimed adverse interests in the property; and it manifestly

would be unjust to require the defendant *Gilman* to pay the plaintiff for improvements put upon the lot, when both such improvements and the lot itself had been lost in consequence of the neglect of the latter to pay the taxes which he was under obligation to pay. Indeed, we do not see how it was possible, under the circumstances, to settle the equities existing between the original parties without bringing in *Bedford B.* and *E. C. Hopkins*, representing conflicting claims. See *The Northwestern Mut. Life Ins. Co. v. Park Hotel Co.*, 37 Wis., 125; *Hunter v. Bosworth*, 43 Wis., 583.

No time will be spent in attempting to show that it was the plain duty of the plaintiff's intestate to pay all taxes and assessments levied upon the lot while he was in possession. This he was bound to do, as well on account of his relation to the property as by covenants in the lease; and it is quite apparent that if he could not himself take a tax deed upon the property and hold it as against his landlord, he could not procure it to be done by others for his benefit. We are quite well satisfied by the evidence that the tax deeds taken by his brothers were really for his use and benefit. All the facts of the case relating to the tax titles point irresistibly to that conclusion; but we shall not discuss the evidence upon that point. We attach no importance to the pretended adjudication in respect to one of these tax deeds in the case of *B. B. Hopkins v. Otis B. Hopkins*. Instead of dismissing the suit as to the defendants *Bedford B.* and *Edward C. Hopkins*, the judgment should have been as to them that the two tax deeds mentioned in the case were cancelled of record, as having been taken by them for the purpose of aiding their brother *Otis B.* to obtain some undue advantage in this litigation. We have said all that we deem it necessary to say as to the liability of the plaintiff for rent from May 1, 1865, and his duty to discharge all tax liens against the property.

*By the Court.* — The judgment of the circuit court is reversed, and the cause remanded for a restatement of the account

between the plaintiff and the defendant *Gilman*, according to this opinion, and for an order adjudging the tax deeds to be cancelled.

RYAN, C. J., took no part in this cause.