# CASES DETERMINED

## *January Term, 1886.*

---

Ecke, Respondent, vs. Fetzer, Appellant.

*December 2, 1885 — January 12, 1886.*

Landlord and Tenant. *(1) Covenant to pay for improvements runs with the land: When assignee bound. (2, 3) Equitable lien for improvements: Purchaser with notice.*

1. A covenant of the lessor to pay for improvements to be made upon the leased premises by the lessee during the term, runs with the land and binds an assignee of the lease who receives rent as such during the term, although the assignee is not mentioned in the lease.
2. When the lessor is by contract liable to pay the tenant for improvements made during the tenancy, the latter, in the absence of any special contract to the contrary, will have an equitable lien upon the premises and the right to retain possession until payment is made.
3. And any person who acquires title to the land, with notice of such claim of the tenant, will take subject to such lien, and cannot recover possession until payment is made.

APPEAL from the Circuit Court for *Door* County.

The case is sufficiently stated in the opinion. The defendant appealed from a judgment in favor of the plaintiff that he recover possession of the land and $180.40, rents and profits, besides the costs of the action.

For the appellant there were briefs by *Timlin & Manseau*, of counsel, and oral argument by *Mr. Timlin*. To

the point that the covenant to pay for the improvements runs with the land, and the defendant has the same remedies against the plaintiff as against his immediate lessors, the McCormicks, or Sohn, they cited sec. 2195, R. S.; *Hunt v. Danforth*, 2 Curt. C. C. 592; 5 Wis. Leg. News, No. 44 (July 26, 1883); *Frederick v. Callahan*, 40 Iowa, 311; *Greason v. Keteltas*, 17 N. Y. 497; *Bailie v. Rodway*, 27 Wis. 172. Secs. 2194, 2195, R. S., should be construed to override the distinction taken in *Spencer's Case*, 5 Rep. 16, and somewhat blindly followed in a few subsequent cases, with regard to covenants relating to things not *in esse* in which the assignee is not named. See *Verplanck v. Wright*, 23 Wend. 506; *Norman v. Wells*, 17 id. 136; *Coffin v. Talman*, 8 N. Y. 465; *Allen v. Culver*, 3 Denio, 296; *Bally v. Wells*, 3 Wils. 25.

For the respondent there was a brief by *Nash & Nash*, and oral argument by *Mr. L. J. Nash*. They contended, *inter alia*, that the agreement relative to the construction of a store building was not a covenant running with the land and did not bind the assignee of the lessors. 2 Hilliard on Real Prop. 571; Wood on L. & T. 501, 505; 1 Washb. on Real Prop. 437; *Tallman v. Coffin*, 4 N. Y. 134; *Coffin v. Talman*, 8 id. 465; *Masury v. Southworth*, 9 Ohio St. 341; *Allen v. Culver*, 3 Denio, 284; *Pierce v. Kneeland*, 16 Wis. 672; *Hanson v. Meyer*, 81 Ill. 321; *Gray v. Cuthbertson*, 2 Chit. 482; *Gorton v. Gregory*, 3 Best & S. 90; *Lametti v. Anderson*, 6 Cow. 302. A covenant to renew runs with the land, as the right to a renewal constitutes a part of the tenant's interest in the land; so when the tenant's right to be paid for improvements is the alternative of the landlord's failure to renew, then such alternative necessarily becomes a part of the covenant to renew, and as such runs with the land. Wood on L. & T. 675; *Noonan v. Orton*, 4 Wis. 335; *Hopkins v. Gilman*, 22 id., 476; *S. C.* 47 id. 581; *Bailie v. Rodway*, 27 id. 172. A breach of the covenant in question,

if there was any breach, was complete before the plaintiff became owner, and therefore the liability was perfect against other parties and did not descend upon him. Wood on L. & T. 506; 1 Washb. on Real Prop. 434; 1 Smith's L. C. (5th Am. ed.) 172, (8th ed.) 221; *Coffin v. Talman*, 8 N. Y. 465; *Bickford v. Page*, 2 Mass. 455; *Bartholomew v. Candee*, 14 Pick. 167.

TAYLOR, J. This is an action of ejectment, brought by the respondent to recover of the defendant (the appellant) about two acres of land. The defendant claimed to be in possession under a lease from the remote grantor of the plaintiff, and claims that, by the terms of his lease, he is entitled to pay for a building erected by him on the leased premises, and to retain possession until such payment is made.

The undisputed facts are that on August 29, 1867, Joseph McCormick and his wife were the owners in fee of the lands in question, and on that day they, by a written lease, let the premises, which were then unimproved, to the defendant for the term of five years, for the annual rent of $35. The part of the lease which is of importance in this case reads as follows: " The said [defendant] is to have the privilege to erect thereon a store building, such a one as may be convenient for his use, to be paid for by the said McCormick at the end of said term of five years, at a fair valuation, to be determined by disinterested appraisers if need be." The defendant entered into possession, and paid the rent, and erected a store building, as he was authorized to do by the terms of said lease, on said premises, which remained there at the expiration of the term, and is still on said premises, and was of the value of $500 when the lease expired, and at the present time is worth a still larger sum. The annual rent was paid for the first year to the McCormicks, and on November 12, 1867, the McCormicks assigned the lease to

one Ludwig Sohn, and at the same time conveyed the lands to said Sohn. Thereafter, and until the expiration of the term of five years, the defendant paid the annual rent to said Sohn, who received the same and receipted therefor. Since the expiration of the term in 1872, the defendant has paid no rent to Sohn, or to any other person. On or about April 18, 1883, Sohn conveyed the premises by quit-claim deed to the present plaintiff, who took such conveyance with knowledge of the rights claimed by the defendant.

The learned circuit judge finds as a fact that shortly before the expiration of the term in August, 1872, Sohn recognized the store building as the one built under the lease, and at the expiration of the lease, in 1872, "there was some talk between Sohn and the defendant relative to the latter's buying the land or selling the building; that defendant wanted to retain the property. but no agreement was arrived at relative to the buying or selling, and Sohn made no new agreement relative to the defendant's improving the property and receiving pay for his improvements; that the building then on the land, and built under the lease, increased the value of the land $500; that after this Sohn did not meet the defendant until 1881; and that during the time between 1872 and 1881 Sohn wrote to the defendant several times demanding payment of rent for the premises, and that defendant paid no attention to these letters." It is also found that since 1872 the defendant has made other improvements on the land of the value of $900 or thereabouts. The judge also found that in 1881 Sohn again visited the premises, and demanded his rent from August, 1872; that defendant refused to pay, claiming to own the premises, and Sohn made no offer to pay for the improvements then on the land or for any part of them.

The learned circuit judge held that the defendant had no remedy to enforce the payment to him of the value of the house or store except the proper legal remedies; and that

the defendant had no lien upon the said two-acre tract for his claim for improvements, and is not entitled to retain possession of the leased premises until such payment is made, to enforce such payment.

The only other fact which is perhaps material is that the evidence shows that, at the expiration of the lease in 1872, the two acres, without the store building thereon, were not worth to exceed $100, and were not worth much more when the action was tried, and that, with the improvements made by the defendant, they are worth about $1,500 or $1,600.

We think the findings of fact, as found by the learned circuit judge, are supported by the evidence, and the only material question is whether his conclusions of law, that the defendant has no remedy to enforce payment for the value of the house, or store building, except proper legal remedies, that the defendant has no lien upon the two-acre tract for improvements, and is not entitled to retain possession of the leased premises until such payment is made, are correct conclusions to be drawn from the facts found. We think the conclusions of law in the case are in conflict with the decisions of this court, as well as with the current of authority in other courts. The learned counsel who argued the case on the hearing of this appeal have discussed the main question in the case with a commendable degree of care and research, viz., whether the agreement or covenant of the lessors, contained in the lease, runs with the land and binds the assignee of the lease. After a consideration of the numerous cases cited, and of others not cited, we are forced to the conclusion that the covenant to pay for improvements made by the tenant during the term, and which remain on the premises at the end of the term, is a covenant which runs with the land and binds not only the lessor but the assignee of the lease who receives his assignment of the lease during the term and receives rent as such

assignee during said term; and had this action been com-
menced by Sohn, who became the landlord of the defend-
ant, and received rent from him during the term, there
could, we think, have been no doubt, upon the authorities,
as well as upon principle, that the defendant could have
maintained an action at law against him to recover the
value of the improvements made. And in such case it can
make no difference that the assignees of the lessor are not
mentioned in the lease as being bound. The covenant,
being a covenant which runs with the land, binds the
assignee of the lessor, who is also the assignee of the lease
and becomes the landlord of the tenant during the term.
In such case the assignee of the lease becomes bound under
the statute (sec. 2195, R. S.), although not named in the
lease.

In *Mansel v. Norton*, L. R. 22 Ch. Div. 769, it was held
that a covenant in the lease that the landlord, his heirs,
executors, and assigns, at the expiration or sooner determin-
ation of the term, would pay or allow the tenant, his execu-
tors, administrators, or assigns, for all the tenant's property
in and upon the farm, to be ascertained by a valuation
based on the same terms as that according to which the
tenant paid when his tenancy commenced, runs with the
land. The landlord died, and devised the leased estate to
the plaintiff for life, who entered into possession and re-
ceived rent from the tenant, and at the end of the term paid
the tenant for the property on the farm, and then brought
a suit against the estate of the landlord to recover the
amount so paid by him. It was held he could not recover.
On the argument it was insisted that the liability to the
tenant was a personal one on the part of the testator, who
created the lease, and ought to be satisfied out of his assets.
The court held otherwise, and that, as landlord,— as assignee
of the lease,— he was bound by the covenant.

In *Gorton v. Gregory*, 3 Best & S. 90, it was held that a

covenant somewhat similar to the one in the case last cited did not run with the land, because it related to personal property on the demised premises which was to be paid for by the landlord; and consequently the executor of the deceased landlord, who had paid the tenant, could not recover the amount so paid against the devisee of the demised premises.  WILKES, J., in this case, says:  "It is impossible to say that the chattels here spoken of are confined to fixtures. *If they had been, the covenant would have run with the land,* for the lease provides that the tenant is to make improvements not exceeding 500*l*, a *covenant which would relate to the land itself.*  But the tenant is also to purchase any new articles, matters, and things in substitution of those mentioned in the schedule which might be worn out, so that the covenant relates, not only to improvements in the land, but to new articles introduced for the purpose of the trade of the person to whom the land is let."

In *Grey v. Cuthbertson*, 2 Chit. 482, the covenant was by the lessor alone to take and pay for all fruit trees and bushes growing at the end of the term, which the lessee should plant.  The assignee of the lessor was held not liable, on the decision in *Spencer's Case*, 5 Rep. 16, that it was a covenant as to a thing not *in esse*, and so did not run with the land.  This case is, we think, in conflict with the two cases before cited, and must be considered overruled by them.

In none of the cases is any stress laid upon the fact that the assignee of the lessor was mentioned in the covenant. The cases all hold that the covenant runs with the land because it relates to something to be done on the land for its improvement, and not because the assignees of the covenantor are mentioned as being bound by the covenant.  The cases also hold that when the covenant does not in fact run with the land, and the covenant has no relation to the land leased, neither the assignee of the lease nor of the reversion

is bound by such covenant, though the assignees are mentioned in the lease. 1 Washb. on Real Prop. 329–331, and cases cited in note. The rule in *Spencer's Case*, 5 Rep. 16, that when the covenant relates to a thing to be done, and which is not *in esse*, it does not bind the assignee of the lessor or lessee unless the assignee be named in the lease, does not seem to have been followed by the English courts, nor by many of the courts in this country. *Hunt v. Danforth*, 2 Curt. C. C. 592; *Verplanck v. Wright*, 23 Wend. 506, 511.

But if we are mistaken as to the weight of authority upon the question as to whether an assignee of the lease is liable to the lessee upon the covenant of the lessor to pay for improvements to be made upon the leased premises when such assignee is not named in the lease, this court has held that, as between the lessor and the lessee, the lessee will not be compelled to surrender possession of the leased premises until such improvements are paid for by him, and this rule must apply to every person who stands in no better position than the original lessor. It will be seen that the decisions of this court were not placed upon the ground that the plaintiff had no adequate remedy at law. In the case of *Hopkins v. Gilman*, 22 Wis. 476, and 47 Wis. 581, Gilman was not allowed to recover possession of the premises until he paid for the improvements, though he was known to be a man of great wealth. The case in *Hopkins v. Gilman* was very much like the present in its main features. The lease was given on an unimproved lot, and large improvements were put thereon by the tenant under an agreement with the landlord that he should either renew the lease or pay for the improvements. The landlord refused to do either, and sought to remove the tenant by proceedings under the act for forcible entry and detainer. Hopkins brought an action to enjoin such proceedings and compel the giving of a new lease. This court held that it could not compel the granting of a new lease, but did grant

relief so far as to permit the tenant to hold possession until his claim for improvements was settled. In deciding that case this court say: "What relief, if any, is the plaintiff entitled to? He or his assignor entered into possession of the lot, and has made valuable improvements thereon, as it is obvious the parties expected he would do. Must, then, he yield up possession, and resort to his action at law to recover damages for a breach of the covenants in the lease? Or can he have the value of his improvements assessed by way of damages in this case? This is. the question which has given us the chief difficulty." And the court finally held that the tenant might hold the. possession until his damages were assessed and paid. In 47 Wis. this view of the case was sustained.

This case, it seems to us, goes upon the ground that the lessee has an equitable lien upon the property for the value of the improvements made by him thereon under the terms of the lease, and that a court of equity will protect him in the possession of the property, including the land leased, until he is paid for the value of his improvements. It is but carrying out the common-law rule that the person who makes or repairs a piece of machinery, or other piece of personal property, may retain the property so repaired or made in his possession until he is paid for the value of his work thereon. Here, as in the *Gilman Case*, the greater portion of the value of the property demanded by the plaintiff consists of the improvements made thereon by the defendant, and for which he is entitled to pay from his landlord before he ought, in equity, to be compelled to surrender possession. The fact that the Gilman lease contained a provision for the extension of the lease, at the option of the lessor, can make no difference in the case, as the landlord in that case had refused to renew the lease, as he had the right to do under the lease, and the lessee had no other right under the lease except to demand payment for the

improvements. The court held that, by the terms of the lease, a court of equity could grant no relief under the provisions for the extension of the lease contained therein, if the landlord chose to withhold the extension, and the case was decided in favor of the tenant on the provisions giving him compensation for the improvements made on the premises during the term.

Had the case at bar been brought by the original lessors, the McCormicks, or by Sohn, who was the landlord of the defendant at the expiration of the lease, there would be no essential difference between this case and the *Gilman Case*, and it would be ruled by it.

In the case of *Bailie v. Rodway*, 27 Wis. 172, this court held that the grantee of the landlord was bound, by the terms of the lease, to renew the same, or pay for the improvements, at his option; and it was held in that case that the grantee of the landlord having offered to renew the lease upon the terms mentioned in the lease, and the tenant having refused to accept such renewal, he could not retain the possession after the expiration, in order to compel payment for his improvements made on the leased premises; and distinguished the case from *Hopkins v. Gilman* by showing that the tenant was clearly in the wrong in refusing to accept the new lease, according to the terms of the original lease, and he had no claim, therefore, in equity to charge the leased premises with a lien for his improvements made thereon, and if he had any remedy for such improvements he was left to enforce it in an action at law.

In *Delong v. Delong*, 56 Wis. 517, this court held that where the defendant in ejectment held under a deed containing conditions subsequent, which avoided the deed on the failure of the grantee to perform the same, and which also contained an agreement on the part of the grantor to pay the grantee, in case of forfeiture, for the permanent improvements made thereon by him, the value of such im-

provements could be ascertained in the action of ejectment to recover possession of the forfeited premises, and that possession should not be delivered to the plaintiff until the value of such improvements was ascertained and paid.

These cases, we think, clearly establish the rule for this court that when the lessor is by contract liable to pay his tenant for improvements made on the leased premises during the tenancy, the tenant will be allowed to retain the possession of the leased property until such payment is made, unless there be a special contract compelling the tenant to deliver possession without such payment. The tenant is treated as having an equitable lien upon the premises for his improvements, and the right to retain possession in order to enforce such lien.

In the case at bar, the plaintiff, not coming in as assignee of the lease, and therefore not holding the relation of landlord under the lease, is not personally bound by the contract in the lease to pay for the improvements, but, having acquired the title with notice of the claim of the defendant to have an equitable lien on the premises for his improvements, he takes his title subject to such equitable lien, and cannot be permitted to recover the possession of the land until such lien is discharged. We say the plaintiff acquired title with notice of the defendant's claim, because it is clear that the defendant was in the actual possession when plaintiff received his conveyance, and he was therefore bound to take notice of the claim made by the defendant. It seems clear to us that the plaintiff should not be permitted to eject the defendant until his claim for the value of the store building is satisfied.

The circuit judge has found the value of the building $500, and he also found that there was no agreement on the part of the landlord, Sohn, to pay for the other improvements made on the leased premises, and that finding is, we think, supported by the evidence. Upon this state of the facts, we

think the court should have found that the defendant was entitled to the $500, the value of the store building. Upon the $500 the defendant is not entitled to interest, because he has enjoyed the use and possession of the same. From this sum of $500 the court should deduct the amount the court found in favor of the plaintiff for the balance due him for the rents and profits of the premises, viz., $180.40, and should direct that the plaintiff be let into the possession on his payment to the defendant of the sum of $319.60.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with directions to enter judgment in accordance with this opinion.

