RHODE ISLAND HOSPITAL TRUST COMPANY, *Tr. vs.* J. B. FARNUM COMPANY.

APRIL 19, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

88

Moss, J.   This case is before us on the defendant's exception to the decision of the trial justice in favor of the plaintiff, entered after a trial before him, begun with a jury but completed without one by agreement of the parties. It is an action of assumpsit brought by the plaintiff as trustee under a residuary devise and legacy by the will of John Johnston, late of the city of Woonsocket in this state, deceased.   It was brought to recover rent due under an indenture of February 28, 1924, by which John Johnston demised certain real estate in that city to the defendant for a term of years ending December 31, 1931, for certain rentals, which, after December 31, 1926, were $4,920 annually, payable at the rate of $410 for each month, on the first of the next month; and also to recover for the use and occupation of the same premises by the defendant with the consent of the plaintiff, from the termination of the lease to April 30, 1932, at an agreed rate of $140 per month.

All the principal facts of the case were set forth in an agreed statement of facts and the others were shown by uncontradicted evidence.   The indenture of February 28, 1924 recited four previous instruments between the same contracting parties.   The first was a written lease of June 15, 1922, by which Johnston demised to the defendant a

part of the same premises for the term of ten years from January 1, 1922 to December 31, 1931. In it he permitted the defendant to make changes in the demised premises, including the installation of an elevator on the outside of the building, provided that such changes should not weaken the structure of the building. The second and third instruments are in evidence in the case only by the following recital in the indenture of February 28, 1924: "Whereas the Lessor and Lessee by two instruments dated November 27th, A. D. 1922 and June 3rd, A. D. 1923 did agree with each other that the Lessee should make certain improvements and affix certain fixtures to the premises and that in certain contingencies the Lessor should pay the Lessee the fair value thereof to be agreed upon by arbitrators."

By the fourth instrument, dated November 21, 1923, Johnston demised to the defendant, for terms ending December 31, 1931, the remainder of the premises covered by the indenture of February 28, 1924, except that it did not include some yards surrounding the building, which were included in the last indenture. It contained the following agreement: "And it is agreed by and between the parties hereto that if the said lessee shall install on the premises hereby demised a steam heating apparatus and/or electric lighting and wiring, then the lessor shall, at the termination of this lease or any renewal thereof, pay to the lessee the fair value of said improvements." It then provided that if the parties should not be able to agree upon the value, it should be determined by arbitration in a manner set forth. The other agreements and provisions in the instrument are not in evidence in the case.

The indenture of February 28, 1924, after referring to and describing these four prior instruments, said: "Whereas it is deemed advisable by the parties hereto that all their agreements in respect of the said premises should be consolidated in one writing." It next said: "Now, Therefore, This Indenture Witnesseth: That the parties in consideration of the mutual covenants and agreements here-

inafter contained agree to and with each other as follows: . . . ." It then provided that the four prior instruments should be null and void from the date of the execution of the new indenture and 'it should be substituted for them. After the demise, for the term and at the rentals specified, the 'indenture set forth the covenant by the lessee to pay the rent at the times and in the manner specified and the provision that in case of the failure by the lessee to. pay the rent within fifteen days after it became payable, the lessor should be at liberty to enter upon the premises and declare the lease at an end and to take immediate possession of the premises.

By clause 9 it was provided that if the lessee, at the end of the term, should desire a renewal of the lease for a further term of five years and should have given to the lessor one month's previous notice in writing, and should pay the rent reserved and perform its covenants and agreements up to the end of the term, the lessor would renew the lease for a further term of five years. Clause 10, upon which the decision of this case must largely depend, was as follows: "In case the renewal above provided for shall not be made and this lease terminate the 31st day of December, A. D. 1931, then the Lessor covenants and agrees to pay the Lessee the sum of $4,984.00 in full payment for all improvements made and fixtures attached to the demised premises, including heating apparatus, elevator and electrical wiring and fixtures."

Clause 11, which also throws some light on our problem, provided that in case the lease should be renewed as above provided, then "upon the termination of the renewal, to-wit, on the 31st day of December, 1926," (evidently a mistake for 1936), the lessor should make to the lessee a corresponding payment of $3,764. Then followed the 12th and final clause, which is also of great importance in the case: "This Indenture shall be binding upon the parties hereto and their respective heirs, executors, administrators, successors and assigns, and all covenants herein con-

tained shall be taken to be made by and with the heirs, executors, administrators, successors and assigns of the respective parties hereof."

Evidently extensive improvements were made and fixtures attached to the premises, before the execution of this indenture, and for them the lessor was obligated under prior instruments, to pay at the end of the term the agreed or appraised valuations.

It appears that the defendant performed all its obligations under this indenture of February 28, 1924, until November 1, 1931, including the payment to the plaintiff of the monthly installment of rent payable October 1, 1931, for the last preceding month. Meantime Johnston died on February 12, 1928, being then still the owner of the leased premises. There was a long contest as to the probating of another instrument offered for probate as his last will, but finally the will under which the plaintiff received title to these premises, subject to the lease set forth in the indenture of February 28, 1924, was admitted to probate and the plaintiff was appointed executor thereof on October 27, 1931 and was duly qualified, and continued to be executor, at least to the time of the hearing of this case in the superior court. It was stated in the agreed statement of facts that at the time of the appointment the estate was insolvent and had continued to be, though no declaration of insolvency had been filed in the probate court because of the hope that the estate would become solvent by appreciation of the real estate, which formed the greater part of it.

The defendant did not pay the installment of rent payable November 1, 1931 for the month of October, but entered the amount of it, $410, on its books to the credit of the plaintiff against the item of $4,984, which it debited to the plaintiff as being payable to the defendant on January 1, 1932, under the above clause 10 of the indenture of February 28, 1924. It did not pay the installments of rent payable on December 1, 1931, and January 1, 1932,

but credited them in the same way upon its books. No notice of any of these credits was then given to the plaintiff. The defendant did not try to get a renewal of the lease by giving to the plaintiff a month's previous notice in accordance with clause 9 of the indenture. On November 5, 1931, it filed in the probate court its claim against the estate of Johnston for $4,984 under clause 10 of the indenture, and this claim was disallowed. On April 8, 1932, it filed an action on this claim, but apparently the action is still pending without having been tried.

On November 27, 1931, the plaintiff notified the defendant in writing that by reason of the latter's failure to pay the installment of rent which was payable November 1, 1931, it, the plaintiff, declared the lease broken and no longer binding and that it terminated and cancelled the lease. It also, by a representative, entered on the premises with a declared intention of taking possession thereof and ending the tenancy of the defendant under the lease. The defendant, however, refused to admit that the lease was terminated, and continued in occupation of the premises, without any further attempt by the plaintiff to eject it. The defendant, a short time before, had called the plaintiff's attention to the fact that $4,984 would be payable to the defendant at the termination of the lease and that the Johnston estate was probably insolvent; but it received no assurance that the money would be paid. It has since contended that, by reason of the insolvency of the estate, the defendant was not in default under the indenture in not paying the rent due November 1, 1931, since it had a right to withhold payment on account of the $4,984, which would be payable to it on January 1, 1932 and probably could not be paid.

The defendant, without any further steps being taken against it, continued in possession of the premises until April 30, 1932. The parties agreed that $140 per month was a fair charge for the use and occupation of the premises and the defendant made on its books a monthly credit

to the plaintiff of that amount during the continuation of its occupancy after December 31, 1931.

On April 25, 1933, the plaintiff brought its action in the instant case. In the first count of its declaration it claimed damages in the amount of $820 for nonpayment by the defendant of rent under the indenture of February 28, 1924, for the month of October 1931, and the month of November 1931, up to the 27th, when, it alleged, the lease was terminated because of more than fifteen days default in payment of the rent due November 1, 1931. In the second count it alleged a lease to the defendant on November 27, 1931, as tenant from month to month at a rental of $140 a month from November 27, 1931 to April 30, 1932, and possession by the defendant during that period, nonpayment of any rent thereunder, and accrued rent in the amount of $714.

The defendant pleaded the general issue and also a special plea in set-off, claiming that at the time of the commencement of the action the plaintiff was indebted to the defendant, and at the time of the filing of the plea still was so indebted, in the amount of $4,984, under clause 10 of the indenture of February 28, 1924, for improvements, etc., previously made by the defendant on the premises demised by that instrument, which, it alleged, terminated December 31, 1931, in accordance with its terms; and it prayed for judgment on the plea. To this plea the plaintiff pleaded the general issue.

The justice of the superior court before whom the case was tried held, in the decision filed by him, that the covenant by Johnston, in that indenture, to pay the defendant $4,984 for the improvements and fixtures in case the lease was not renewed, and terminated December 31, 1931, did not "run with the land" and therefore could not be used by the defendant as the basis of a set-off against the plaintiff as devisee in trust under Johnston's will.

He also held that the lease, by reason of more than fifteen days default by the lessee in the payment of the in-

stallment of rent due and payable on November 1, 1931, was terminated on November 27, 1931, by the notification of termination served on the defendant by the plaintiff and the plaintiff's entry upon the leased premises. He therefore decided that the defendant was not entitled to be paid the sum of $4,984 on January 1, 1932, since, as he phrased it, "the language of the tenth clause makes this money payable to the defendant *only* in case the renewal shall not be made and that 'this lease terminates the 31st day of December, A. D. 1931.' " He further decided that for this second reason also, *viz.,* that the defendant was not entitled to be paid that sum, the covenant of the lessor in clause 10 of the indenture could not be made the basis of a set-off in this case. He therefore rendered a decision for the plaintiff in the full amount claimed.

We do not agree with him in any of these holdings or conclusions and shall discuss them in the above order. His written decision indicates that in holding that the lessor's obligation under clause 10 did not "run with the land" he relied strongly on his finding "that the improvements were made and the fixtures installed under the documents of November 27, 1922, and June 3, 1923, and not under any lease." This statement is true, in a sense, as to the premises covered by the first lease; but the other two documents mentioned were supplementary to that lease and related to the same premises only, and became virtually parts of it. By them, obligations were assumed by the lessee as such to make improvements and to affix fixtures, and contingent obligations were assumed by the lessor as such to pay for them. The only reasonable inference from the language of the indenture of February 28, 1924 is that improvements had been made and fixtures installed on these premises by the lessee in performance of obligations which it had assumed in the agreements of November 27, 1922 and June 3, 1923, and that the lessor, in certain contingencies, was bound to pay to the lessee their appraised value.

As to the premises covered by the lease of November 21,

1923, the lessor was expressly obligated by that lease to pay to the lessee at the termination of the lease or any renewal thereof, the fair value of a steam heating apparatus and electric lighting fixtures and wiring, if installed by the lessee on those premises. As clause 10 of the final indenture expressly included heating apparatus and electric wiring and fixtures among the improvements and fixtures for which the lessor covenanted to pay $4,984, the inference is clear to us that such heating apparatus, and electric wiring and fixtures had been installed by the lessee on the premises covered by the second lease. Whether that lease required or only permitted their installation is not shown by the evidence; but it *is* clear that the lessor was bound, by his covenant in that lease, to pay to the lessee, at the termination of the lease or any renewal of it, the fair value of them, if installed.

The last indenture expressly consolidated all the preceding leases and agreements into one document, and the only material change that is apparent is that, instead of the lessor being obligated to pay the fair value of the improvements and fixtures, he became obligated to pay the lump sum of $4,984 for them all, irrespective of what portion of the premises they were in. All the prior instruments were annulled upon the taking effect of the new instrument, and in our opinion clause 10 created an obligation on the part of the lessor which applied to the improvements and fixtures in all the leased premises indiscriminately.

Whether the covenants of the lessor, in the intervening agreements, and in the second instrument of lease, to pay for improvements and fixtures, were expressly made in behalf of his heirs, executors, administrators and assigns, does not appear from the evidence. But it is a matter of common knowledge, of which the court can take notice, that in the forms of leases in general use in this State the obligations of the lessor are expressly so made; and in the indenture of February 28, 1924, they were expressly so made; and this, as above stated, was almost solely a consolidation of

the prior instruments. Therefore the natural and reasonable inference is that in them the covenants of the lessor were so expressed.

At any rate, they were so expressed in the final indenture, and the plaintiff in this case not only came within the meaning of "assigns" on November 27, 1931, when it attempted to terminate the lease, and on December 31, 1931; and when the case was decided in the superior court, since it had legal title to the reversionary interest in the leased property as devisee under the will of the lessor. It was also at the same times executor of his will; and, as the estate was insolvent, at least for the purposes of this case, its status as devisee cannot be wholly separated from its status as executor. It was not a purchaser of the property for a valuable consideration, thus taking title free from the ordinary debts and obligations of the decedent lessor; but, on the contrary, as the estate was then insolvent, the plaintiff held the title subject to the likelihood that it would have to be sold by it as executor, under authority from the probate court, in order that the proceeds of its sale could be applied to the payment of his debts and the discharge of his obligations.

The plaintiff, as devisee in trust under his will, collected rentals due from the defendant under the lease, and got the benefit of those which were payable during about three and one-half years; and brought the present action to collect such rentals which were overdue and unpaid on November 27, 1931, thus claiming and enjoying the benefit of the covenants of the lessee under the last indenture. Subject to any excess of the debts over the assets of the lessor's personal estate, and without giving any consideration but the acceptance of the trusts set forth under his will, it has succeeded to his rights in the demised property, including his right to the enjoyment, upon the termination of the lease, of the very improvements and fixtures for which he covenanted, in behalf of himself and his heirs, executors, administrators, successors and assigns, to pay $4,984. In our judg-

ment it must, under the circumstances of this case, take the burdens with the benefits.

We are of the opinion that the facts above stated distinguish this case from those cited by counsel for the plaintiff as being in favor of the plaintiff on this question of whether the lessor's covenant, relied on by the defendant, ran with the reversion so as to become binding on the plaintiff; and that it did so run and become binding on the plaintiff, as trustee, when it accepted the devise under the will.

There is ample and apparently undisputed authority for the rule that such a covenant by a lessor, to pay for improvements, to be made and actually made by the lessee, to a building on the demised premises, touches and concerns the land, and that it runs with the reversion and binds assigns of the lessor, at least if the covenant is expressly made in behalf of such assigns, and the improvements have been made by the lessee under a correlative obligation assumed by him to make them. *Frederick* v. *Callahan*, 40 Iowa 311; 2 Thompson on Real Property, 370, § 1271. In *Ecke* v. *Fetzer*, 65 Wis. 55, 26 N. W. 266, such a covenant was held binding on assigns of the lessor, though the lessee had only permission to make the improvement.

There are some authorities, largely *dicta*, to the effect that assigns of the lessor are not bound by such a covenant, if the lessee was not obligated to make the improvements in question. *Willcox* v. *Kehoe*, 124 Ga. 484, 52 S. E. 896, and notes thereon in 4 Ann. Cas. 439, and 4 L. R. A. (N. S.) 469; 16 R. C. L. 801-802. We are inclined to the opinion that even in such a case assigns with notice should be bound, if they were expressly named in the covenant. But, at any rate, the instant case is, in our judgment, distinguished from these authorities by the special facts to which we have called attention *supra*.

Counsel for the plaintiff state that the statute of 32d Henry VIII which "provided that the assigns of lessors should have the benefit of covenants in leases and should be bound by their burdens . . . has not been enacted in

Rhode Island"; and they question whether it has been treated as a part of the law of England brought over by the colonists. They have evidently overlooked the fact that the portion of that statute which is pertinent in this case, together with a number of other English statutes, was, by an act of the general assembly in the February session, 1749 O. S. introduced into the colony of Rhode Island and put in full force until the general assembly should order otherwise; and that this action was confirmed in the two next later revisions of the statutes. Rhode Island Acts & Resolves, Oct. 1747 to Oct. 1753, p. 70 of 1749 O. S.; Public Laws of R. I. 1767, p. 55; Laws of R. I. 1798, p. 78. So far as we have ascertained, the general assembly has never ordered otherwise.

For the above reasons we are of the opinion that the plaintiff, during the decisive period from October 1, 1931 to January 1, 1932, was in the same legal position, as to the indenture and the defendant, as Johnston, the lessor, would have been in if he had been living and insolvent.

Taking that as settled, we come now to the question whether, by the proper construction of the indenture, the lessor's covenant to pay the lessee the sum of $4,984 on December 31, 1931, for the improvements and fixtures, was so far independent of the complete performance of the lessee's covenant to pay rent and of the continued existence of the lease until that date that the plaintiff was then indebted to the defendant in that sum.

The language of clause 10 of the indenture, as above quoted, was as follows: "In case the renewal above provided for shall not be made and this lease terminate the 31st day of December A. D. 1931, then the Lessor covenants and agrees to pay the Lessee the sum of $4,984.00", etc. The plaintiff contends that this must be construed to mean that, if the lease be terminated before that date, because of non-payment of rent within fifteen days after it became payable, the sum of $4,984 would not be payable by the lessor.

But this covenant must be construed in the light of the other pertinent provisions of the instrument. One of these provisions was clause 9, which provided that the lessor at the end of the term would renew the lease for a further term of five years, if the lessee gave the lessor certain notice and "should pay the rent reserved and perform its covenants and agreements up to the end of the term." This shows that the parties knew perfectly well how to provide that a covenant of the lessor to do something at the end of the term, meaning obviously the full term as specified in the lease, should be conditional upon the performance by the lessee of its covenants to that date. The absence in clause 10 of a condition *so expressed* indicates strongly that the parties did not intend to make the lessor's covenant in that clause subject to a condition of the same effect.

The language of clause 11 strongly supports the same conclusion. This provided that in case the lease should be renewed under the option given the lessee in clause 9, then "upon the termination of the renewal, to-wit on the 31st day of December, 1926," (for 1936), the lessor should make to the lessee a payment of $3,764 for the improvements and fixtures. It is clear that here the parties used "termination" in the sense of the expiration of the time for which the lease was renewed and in that sense only. Moreover, if the parties had intended in clause 10 to make the payment of the $4,984 conditional upon the full performance by the lessee of its covenants or upon the lease continuing in force until its expiration date, no reason can be found why they should not have wished to put a similar condition in clause 11. Yet it is obvious that they put no such condition in the latter clause.

What then did they mean by the language in clause 10 expressive of a condition? It seems clear to us that they meant to accomplish just the same result as if they had said, "In case the renewal above provided for shall not be

made and this lease shall therefore not continue beyond the 31st day of December A. D. 1931," *etc.*

This construction of the language of that clause is also strongly supported by the fact that the lease of November 21, 1923 contained the following agreement, quoted *supra,* which corresponded with the agreements in the above clauses 10 and 11: "And it is agreed by and between the parties hereto that if the said lessee shall install on the premises hereby demised a steam heating apparatus and/or electric lighting and wiring, then the lessor shall, at the termination of this lease or any renewal thereof, pay to the lessee the fair value of said improvements." That clearly contained no such condition as the plaintiff now tries to find in the language of this clause 10. We do not believe that the parties intended to introduce in the consolidated indenture any such new condition, which would be of the nature of a provision for a forfeiture and very detrimental to the interests of the lessee.

We therefore find that the obligation of the lessor to pay the lessee $4,984 on December 31, 1931, was not, by clause 10, made conditional on the lease continuing in force to that date. The plaintiff, however, also contends that even if the language of clause 10 did not make the lessor's covenant to pay the lessee for the improvements and fixtures on December 31, 1931, thus conditional, yet "the forfeiture of the lease left the defendant with no agreement upon which to base a claim for compensation" for the improvements and fixtures. But in our judgment this contention is not sound, for the following reasons.

The inception of the lessor's obligation to pay for a part of the improvements and fixtures was in the instrument of June 3, 1923, which was not a lease at all; and by that instrument the sole consideration for that obligation was the agreement of the lessee to make and affix them. The inception of the lessor's obligation to pay for the rest of the improvements and fixtures was in the instrument of November 21, 1923, by which in one part the premises covered

thereby were demised by the lessor to the lessee and in another and apparently separable part it was provided that if the lessee should install on those premises certain improvements, therein described, the lessor would pay for them their fair value at the termination of the lease or any renewal thereof. The consideration for that obligation of the lessor was the installing of such improvements.

The natural conclusion, then, is that in the consolidated indenture, entered into after all the improvements and fixtures had been installed, the consideration for the lessor's covenant to pay a fixed sum for them was the making and installation of those improvements and fixtures; and that consideration had been received. Or, to put it perhaps more accurately, the consideration was the cancellation of the lessor's previous obligation to pay for them their agreed or appraised value.

In our judgment, then, that indenture was really composed of two parts, one of which was a lease in the proper sense of that term, including the demise proper and the lessee's covenant to pay rent, which was the main consideration for the demise, and including also certain other mutual covenants directly connected with the demise. The other part was composed of the lessor's covenants to pay for the improvements and fixtures, for which it had already received the full consideration from the lessee.

In this connection it is noteworthy that the instrument was described in its title as "Indenture", not "Lease", or even "Indenture of Lease". It is also noteworthy that the privilege given to the lessor, in case of fifteen days default by the lessee in the payment of rent, was that "the said Lessor shall be at liberty to enter upon said premises and declare this lease at an end and take immediate possession of the premises." It does not say "declare this *indenture* at an end"; and the only clear intent shown is that the *demise* should be terminated, which would end the covenants inseparably connected with it.

In view of these facts and of the well-settled rule of con-

struction that an instrument is not to be construed as providing for a forfeiture, except so far as the intent to so provide is made very clear indeed, we are of the opinion that this provision of the lease proper should be construed as giving the lessor the right, upon fifteen days default by the lessee, to terminate the *lease proper* but not the other part of the whole *indenture,* namely, the covenants by the lessor, for a consideration already fully received by him, to pay for the improvements and fixtures, of which he would at once become entitled to the possession and full benefit upon the termination of the lease.

Our opinion on this whole phase of the case is, then, that the obligation which we have found to have become binding on the plaintiff as the lessor's successor in title, to pay the defendant $4,984 on December 31, 1931, if the lease was not renewed, was so far separate from and independent of the continuance of the lease in effect until that date, and of the performance by the defendant of its obligation to pay the rent, that this obligation of the plaintiff was not annulled by the plaintiff's own entry into the leased premises with the expressed intent of terminating the lease and with the obvious purpose of thus annulling its said obligation, or by the failure of the defendant to pay the rent payable November 1, 1931 and thereafter, a failure which could do the plaintiff no damage, since it could deduct the unpaid rent from the $4,984.

Hence we find that the plaintiff, on December 31, 1931, was indebted to the defendant, under the indenture, in the sum of $4,984; that on the basis contended for by the plaintiff and set forth in its declaration, namely, the termination of the lease on November 27, 1931, the defendant, on December 31, 1931, was indebted to the plaintiff, under the indenture, for rent from October 1 to November 27 at the rate of $410 per month, which would be $779, plus a little interest; and on April 30, 1932 the defendant was indebted to the plaintiff for the use and occupation of the premises from November 27, 1931 to April 30, 1932, at the rate of $140 per month, or $714, plus some interest.

Our opinion then is that, on the statement of facts as agreed on by the parties and the evidence supplementing it, the defendant is entitled to a judgment, on its plea of set-off, for the difference between the first of the above items of indebtedness, and the sum of the other two of those items.

The defendant's exception is sustained.

On April 26, 1937, the plaintiff may appear before this court and show cause, if any it has, why the case should not be remitted to the superior court for the entry of judgment in accordance with this opinion.

BAKER, CONDON, JJ., dissent.

*Tillinghast, Collins & Tanner, Harold E. Staples, Robert W. Hankins,* for plaintiff.

*John R. Higgins, Sidney Silverstein,* for defendant.